

FILED
2021 Aug-06  AM 10:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA EASTERN DIVISION

| | |
|---|---|
| **HARRISON ALLEN WISENER.** ) | |
| **CINDY LEEANN WISENER,** ) | |
| **HAROLD LOGAN WISENER,** ) | |
| **AND HARRISON ALLEN WISENER** ) | |
| **AND CINDY LEEANN WISENER AS** ) | |
| **NATURAL GUARDIANS AND NEXT** ) | |
| **FRIENDS OF HMW, MEW, and MGW** ) | |
| ) | |
| **PLAINTIFFS,** ) | |
| ) | |
| **v.** ) | **Case Number:** _____ |
| ) | |
| **CMH HOMES, INC.,** ) | **THE PLAINTIFFS** |
| **CMH HOMES, INC. d/b/a** ) | **DEMAND A TRIAL BY** |
| **TRUEVALU HOMES OF** ) | **STRUCK JURY** |
| **ALEXANDRIA, AND** ) | |
| **CMH HOMES, INC. d/b/a** ) | |
| **GILES** ) | |
| ) | |
| **DEFENDANT.** ) | |

## COMPLAINT

COMES NOW HARRISON ALLEN WISENER and CINDY LEEANN WISENER, as

Plaintiffs in the above-styled action, by and through their undersigned attorney of

record, R. Patrick Chesnut, and as grounds for their Complaint, would show unto

this Honorable Court, the following:

## STATEMENT OF JURISDICTION

1.     This Court retains jurisdiction over this matter in accordance with 28 USC § 1332 due both to the diversity of citizenship between the Plaintiffs who reside in Polk County, Georgia and the Defendant that is a Tennessee Corporation domesticated to do business in Alabama that is subject to this Court's personal jurisdiction, and to the fact that the amount in controversy exceeds $75,000.00.

## FACTS COMMON TO ALL COUNTS

2.     Harrison Allen Wisener, Cindy Leeann Wisener, Harold Logan Wisener, and Harrison Leann Wisener are each over nineteen (19) years of age, and reside in Polk County, Georgia.

3.     Harrison Allen Wisener and Cindy Leeann Wisener (hereinafter referred to as the "Wiseners") are the parents of Harold Logan Wisener, Harrison Leann Wisener.  Harrison Allen Wisener and Cindy Leeann Wisener are also the parents and natural guardians of HMW, MEW, and MGW.

4.     CMH Homes, Inc. (hereinafter "Clayton") is a foreign corporation with its principal place of business in Knoxville, Tennessee, and is domesticated to do business in the State of Alabama.

5.     Clayton does business as TruValue Homes of Alexandria, Alabama..

6.     Clayton does business as Southern Energy Homes.

7.     Clayton does business as Giles.

8.      On or about August 6, 2019, in Calhoun County, Alabama, the Wiseners entered a contract with Clayton, doing business as TruValue Homes of Alexandria, to purchase a **<u>new</u>** "Southern Energy" manufactured home (this manufactured home at issue in this matter shall hereinafter be referred to as the "Manufactured Home").  *See* (Ex A, the Sales Agreement (referred to hereinafter as the "Contract")).

9.      In the Contract, the Wiseners promised to: enter a binding dispute resolution agreement with Clayton; to trade in their old home, a 1988 model manufactured home; to make a down payment of $1,500.00, and to pay Clayton with the proceeds of a loan from Vanderbilt Mortgage and Finance, Inc., in the principal amount of $106,292.00 at 10.15% interest to pay the Defendants.

10.     The amount the Wiseners will have paid after they make all of the payments as scheduled under the loan from Vanderbilt Mortgage and Finance, Inc. will total $278,332.45.  *See* (Ex B, TILA disclosure).

11.     Clayton, in the Contract, agreed to: sell the Wiseners a new Southern Energy Manufactured Home identical to or in substantially similar condition as the display model, brochures and bulletins, and floor plans provided by Clayton; sell the Wiseners a warranty from the Federal Warranty Service Corporation; provide the Wiseners with a manufacturer's limited warranty (the "Manufacturer's Warranty");

and provide the Wiseners with a retailer's limited warranty (the "Retailer's Warranty").

12.     Clayton is not licensed to sell insurance or warranties in the State of Alabama.

13.     Clayton holds no appointment to sell insurance or warranties from the Federal Warranty Service Corporation.

14.     Further, in the Contract, Clayton agreed to deliver, set, and trim out the Manufactured Home, to install footers for the Manufactured Home in accordance with applicable county regulations.

15.     The Defendant also agreed to install water connections, sewer connections, power connections, white vinyl skirting, and an air conditioner upon, within, or around the Manufactured Home.

16.     On or about August 20, 2019, Clayton, or an agent of Clayton, delivered the Manufactured Home to the Wiseners.

17.     Upon its delivery to the Wiseners, the Manufactured Home was far from new. The Manufactured Home was covered in mold, deteriorated, reconditioned, reclaimed, used, secondhand, or altered to the point of decreasing its value and/or rendering the Manufactured Home unfit for use as a family dwelling.

18.     When Clayton delivered the Manufactured Home to the Wiseners on about August 20, 2019, the Manufactured Home was in a state of disrepair with holes in the flooring and ceiling.

19.     When Clayton delivered the Manufactured Home to the Wiseners on about August 20, 2019, the ends of the Manufactured Home were open to the elements; birds and squirrels nested there.

20.     The Wiseners seasonably rejected Clayton's tender and delivery of the Manufacturing Home.

21.     Clayton, however, refused to take the Manufactured Home back.

22.     Due to the mold infestation and general disrepair and safety hazards stemming from the condition of the Manufactured Home, the Plaintiffs suffered medical problems including but not limited to respiratory problems.

23.     The Wiseners hired attorneys to protect their rights and interests in this matter.

## COUNT I
### (Fraud)

24.     In this Count, and by this paragraph, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

25.     Plaintiffs bring this count pursuant to the common law and to § 6-5-100 and § 6-5-101 of the *Code of Alabama*.

26.     On or about August 6, 2019, the Wiseners and Clayton the Defendant were negotiating regarding the Plaintiff's purchase of a new manufactured home from the Defendant.

27.     At that time and during those negotiations, Clayton represented to the Plaintiffs that the manufactured home that they were negotiating to purchase would be a new manufactured home.  *See* (Ex A); *see also* (Ex C).

28.     Also at that time and during those negotiations, the Defendant represented to the Plaintiffs that the manufactured home that they were negotiating to purchase would be identical to or in a condition substantially similar to the display model(s) of the manufactured home that the Defendant presented to the Plaintiffs. *See id*.

29.     Further at that time and during those negotiations, the Defendant represented to the Plaintiffs that the manufactured home that they were negotiating to purchase would be identical to or in a condition substantially similar to the manufactured home depicted in the brochures and bulletins and/or the floor plans provided by Clayton.  *See id*.

30.     Further still, on or about August 6, 2009, Clayton represented to the Wiseners that the Clayton sold the Wiseners a third-party warranty to insure the Manufactured Home from the Federal Warranty Service Corporation.  *See* (Ex A); *see also* (Ex B at 2).

31.    The Plaintiffs believed the Defendants representations, relied on the Defendant's representations, and acted upon the Defendants' representations by trading in their family home in exchange for $8,000 in trade-in equity, by paying $1,500.00 in a down payment, and by paying an additional $106,292.20 to the Defendants with the proceeds of a loan secured by the Manufactured Home.

32.    As a direct and/or proximate cause of the actions and/or omissions of the Defendant, Clayton, the Plaintiffs have suffered the following damages: the loss of their old dwelling place, a 1988 manufactured home; the loss of their $1,500.00 down payment; an undersecured indebtedness to Vanderbilt Mortgage in the principal amount of $107.55.20 at an annual percentage rate of 10.15% for a total amount due to Vanderbilt Mortgage of $278,332.45; the Plaintiffs were made sick, sore, and lame; the Plaintiffs suffered expenses for medicine and physicians' fees, and will be caused to continue to incur such expenses in the future; the Plaintiffs suffered pain and suffering from the damages caused by the Defendant; the Plaintiffs suffered mental anguish and/or emotional distress from the injuries caused by the Defendant. the loss of insurance premiums and taxes paid on the Manufactured Home; and the loss of the use of their home as a place for family to gather and celebrate, among other costs and damages.

33.    The Plaintiffs claim punitive damages of the Defendants because of the intentional or gross and reckless nature of the Defendants' fraud.

WHEREFORE, the Plaintiffs request this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant, Clayton, to compensate the Plaintiff for the damages listed herein, in its discretion, plus interest, costs, attorney's fees, and such other, further and different relief as they may prove themselves entitled.  The Plaintiff further demands punitive damages against the Defendant, Clayton for its conscious, deliberate, wanton, willful, and malicious actions, or omissions, in an amount in the discretion of the trier of fact.

**COUNT II**
**(Deceit and Fraudulent Deceit)**

34.     In this Count, and by this paragraph, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

35.     The Plaintiff brings this count pursuant to the common law and to § 6-5-103 and § 6-5-104 of the *Code of Alabama*.

36.     Clayton fraudulently or recklessly promised to deliver the Wiseners a new manufactured home.

37.     Clayton fraudulently or recklessly promised to deliver the Wiseners a manufactured home a new manufactured home.

38.     Clayton fraudulently or recklessly promised the Wiseners that the Manufactured Home that they were negotiating to purchase would be identical to or

substantially similar to the display model(s) of the manufactured home that the Defendant presented to the Plaintiffs.

39.    Clayton fraudulently or recklessly promised the Wiseners that the Manufactured Home that they were negotiating to purchase would be identical to or substantially similar to the manufactured home depicted in the brochures and bulletins and/or the floor plans provided to the Seller by the manufacturer.

40.    Clayton fraudulently or recklessly promised the Wiseners that Clayton had the authority to sell the Wiseners a home warranty from the Federal Warranty Service Corporation.

41.    Clayton fraudulently or recklessly promised the Wiseners that Clayton sold the Wiseners a home warranty from the Federal Warranty Service Corporation.

42.    Clayton fraudulently or recklessly promised the Wiseners that the Federal Warranty Service Corporation would repair or replace the Manufactured Home if it had any defects.

43.    By entering the Contract, the Wiseners alterned their position to their own injury and risk.

44.    As a direct and/or proximate cause of the actions and/or omissions of the Defendant, Clayton, the Plaintiffs have suffered the following damages: the loss of their old dwelling place, a 1988 manufactured home; the loss of their $1,500.00 down payment; an undersecured indebtedness to Vanderbilt Mortgage in the

principal amount of $107.55.20 at an annual percentage rate of 10.15% for a total amount due to Vanderbilt Mortgage of $278,332.45; the Plaintiffs were made sick, sore, and lame; the Plaintiffs suffered expenses for medicine and physicians' fees, and will be caused to continue to incur such expenses in the future; the Plaintiffs suffered pain and suffering from the damages caused by the Defendant; the Plaintiffs suffered mental anguish and/or emotional distress from the injuries caused by the Defendant. the loss of insurance premiums and taxes paid on the Manufactured Home; and the loss of the use of their home as a place for family to gather and celebrate, among other costs and damages.

WHEREFORE, the Plaintiffs request this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant, Clayton, to compensate the Plaintiff for the damages listed herein, in its discretion, plus interest, costs, attorney's fees, and such other, further and different relief as they may prove themselves entitled. The Plaintiff further demands punitive damages against the Defendant, Clayton for its conscious, deliberate, wanton, willful, and malicious actions, or omissions, in an amount in the discretion of the trier of fact

## COUNT III
### (Claim for Interlocutory and Final Declaratory Judgment)

45. In this Count, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

46.    In August of 2019, the Wiseners and the Defendant entered the Contract.

47.    There exists an actual controversy between the Wiseners and the Defendant on which substantial property rights and personal liberties depend.

48.    In the Contract, Clayton promised to sell the Wiseners a new manufactured home identical to or substantially similar to the display model manufactured homes.

49.    In the Contract, Clayton promised to sell the Wiseners a new manufactured home identical to or substantially similar to the manufactured homes depicted in the manufacturer's brochures, bulletins, and floor plans.

50.    In the Contract, Clayton promised to sell the Wisners a third-party warranty from Federal Warranty Service Corporation.

51.    The Contract conditioned the sale of this new manufactured home upon the Wiseners' entering into a "Binding Dispute Resolution Agreement".

52.    The Binding Dispute Resolution Agreement reads: "your agreement to the terms of the…Binding Dispute Resolution Agreement is a condition of the sale of your home" (Ex C).

53.    The Wiseners' entry into the Biding Dispute Resolution, therefore, constituted a condition precedent to their purchase of the new manufactured home and third-party warranty from the Federal Warranty Service Corporation.

54.     The Wiseners met the condition precedent by entering the Binding Dispute Agreement.

55.     The Wiseners reasonably relied upon Clayton's representations that the Manufactured Home would be new; that the Manufactured Home would be identical to or substantially similar to or be in the same condition as the display model manufactured homes and/or the manufactured homes depicted in Clayton's brochures, bulletins, and floor plans.

56.     The Wiseners further reasonably relied upon Clayton's representations that Clayton had the authority and ability to sell the Wiseners a manufactured home warranty from Federal Warranty Service Corporation.

57.     Clayton, however, misrepresented the condition of the Manufactured Home as new.

58.     Clayton also misrepresented the condition of the Manufactured Home as being identical to or in a substantially similar condition as the display model manufactured homes and/or the manufactured homes depicted in Clayton's brochures, bulletins, and floor plans.

59.     Clayton further misrepresented itself as authorized to issue the Federal Warranty Service Corporation warranty.

60.     Clayton, therefore, fraudulently induced the Wiseners to enter the Binding Arbitration Agreement.

61.     Moreover, the Binding Dispute Resolution Agreement fails to apply to the transaction at issue in this matter, as it explicitly limits its efficacy and application to a transaction involving a "Home" which the Binding Dispute Resolution Agreement itself defines as "a new manufactured or modular home" (Ex C).

62.     As stated herein, the Manufactured Home was not "a new manufactured or modular home" (*id.*).

63.     Therefore, not only does the Binding Dispute Resolution Agreement not apply to the transaction at issue in this matter due to the Defendant's fraudulent inducement, but it also fails to apply by its own terms.

64.     The Binding Dispute Resolution Agreement, among other things, would cause the Plaintiffs even further monetary damages than they have already suffered by paying fees and costs in accordance with the Rules of the American Arbitration Association.

WHEREFORE, the above premises considered, the Plaintiffs respectfully request this Court to grant injunctive relief by entering both an interlocutory and a final decree holding the Binding Dispute Resolution Agreement void, invalid, inapplicable to the transaction at issue in this matter, and for naught.

## COUNT IV
### (Conversion)

65.     In this Count, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

66.     By its actions, omissions, misrepresentations, fraud, and/or deceit, Clayton has taken and converted the Wisener's trade-in 1988 manufactured home.

67.     By its actions, omissions, misrepresentations, fraud, and/or deceit, Clayton has taken and converted the Wisener's $1,500.00 down payment.

68.     By its actions, omissions, misrepresentations, fraud, and/or deceit, Clayton has taken and converted the $799.00 that the Wisener's gave to Clayton to purchase a warranty from the Federal Warranty Service Corporation.

69.     By its actions, omissions, misrepresentations, fraud, and/or deceit, Clayton has taken and converted $106,292.20 in proceeds from the Wiseners's loan from Vanderbilt Mortgage and Finance, Inc., for which the Wiseners remain liable in a total amount of $278,332.45.

70.     Clayton's taking of the Wisener's trade-in 1988 manufactured home, money, and loan proceeds was wrongful.

71.     Clayton illegally assumed ownership, used or misused, and/or wrongfully detained or interfered with the Wisener's money, and the Wisener's trade-in 1988 manufactured home.

72.    The Wiseners claim punitive damages of Clayton, due the intentional or gross and reckless nature of Fletcher's conversion.

73.    As a direct and/or proximate cause of the actions and/or omissions of the Defendant, Clayton, the Plaintiffs have suffered the following damages: the loss of their old dwelling place, a 1988 manufactured home; the loss of their $1,500.00 down payment; an undersecured indebtedness to Vanderbilt Mortgage in the principal amount of $107.55.20 at an annual percentage rate of 10.15% for a total amount due to Vanderbilt Mortgage of $278,332.45; the Plaintiffs were made sick, sore, and lame; the Plaintiffs suffered expenses for medicine and physicians' fees, and will be caused to continue to incur such expenses in the future; the Plaintiffs suffered pain and suffering from the damages caused by the Defendant; the Plaintiffs suffered mental anguish and/or emotional distress from the injuries caused by the Defendant. the loss of insurance premiums and taxes paid on the Manufactured Home; and the loss of the use of their home as a place for family to gather and celebrate, among other costs and damages.

WHEREFORE, the Plaintiffs request this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant, Clayton, to compensate the Plaintiff for the damages listed herein, in its discretion, plus interest, costs, attorney's fees, and such other, further and different relief to which they may prove themselves entitled. The Plaintiff further demands punitive damages against the Defendant,

Clayton for its conscious, deliberate, wanton, willful, and malicious actions, or omissions, in an amount in the discretion of the trier of fact.

## COUNT V
### (Negligence, Negligent Hiring or Supervision, and Negligent Installation and/or Repair)

74.     In this Count, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

Alabama law imposed the duty of good faith upon Clayton in its performance of the Contract.

75.     Clayton owed the Wiseners the duty of acting in good faith in its performance of the Contract.

76.     By its acts and omissions as set forth herein, Clayton breached that the duty of reasonable care.

77.     By its acts and omissions as set forth herein, Clayton breached that the duty of reasonable care and the duty of good faith.

78.     Clayton also negligently installed the Manufactured Home.

79.     Clayton further negligently repaired the Manufactured Home.

80.     Clayton failed to properly train and/or supervise its employees at TruValue of Alexandria in that the employees at TruValue of Alexandria who were

incompetent as they committed the wrongful acts alleged herein and did so within the line and scope of their employment with Clayton.

81.    Clayton failed to properly train and/or supervise its employees at TruValue of Alexandria in that the employees at TruValue of Alexandria made several fraudulent misrepresentations to the Wiseners, as stated herein

82.    Clayton failed to properly train and/or supervise its employees at TruValue of Alexandria in that the employees at TruValue of Alexandria fraudulently accepted consideration for a third-party warranty to the Wiseners without a license to sell insurance.

83.    Clayton failed to properly train and/or supervise its employees at TruValue of Alexandria in that the employees at TruValue of Alexandria fraudulently accepted consideration for a third-party warranty to the Wiseners without an appointment from the Federal Warranty Service Corporation.

84.    Clayton failed to properly train and/or supervise its employee, Austin Lesley.

85.    Clayton failed to properly train and/or supervise its employee, Garry Wayne Goode.

86.    As a direct and/or proximate cause of the actions and/or omissions of the Defendant, Clayton, the Plaintiffs have suffered the following damages: the loss of their old dwelling place, a 1988 manufactured home; the loss of their $1,500.00

down payment; an undersecured indebtedness to Vanderbilt Mortgage in the principal amount of $107.55.20 at an annual percentage rate of 10.15% for a total amount due to Vanderbilt Mortgage of $278,332.45; the Plaintiffs were made sick, sore, and lame; the Plaintiffs suffered expenses for medicine and physicians' fees, and will be caused to continue to incur such expenses in the future; the Plaintiffs suffered pain and suffering from the damages caused by the Defendant; the Plaintiffs suffered mental anguish and/or emotional distress from the injuries caused by the Defendant. the loss of insurance premiums and taxes paid on the Manufactured Home; and the loss of the use of their home as a place for family to gather and celebrate, among other costs and damage.

WHEREFORE, the Plaintiffs request this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant, Clayton, to compensate the Plaintiff for the damages listed herein, in its discretion, plus interest, costs, and such other, further and different relief to which they may prove themselves entitled.

## COUNT VI
### (Wantonness)

87.    In this Count, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

88.    Clayton knew or should have known that its acts or omissions in delivering the Wiseners the Manufactured Home that did not comport with its

implied and express warranties would likely injure or would probably injure the Plaintiffs.

89.   Clayton knew or should have known that its acts or omissions in failing to repair or replace the defective Manufactured Home would likely injure or would probably injure the Plaintiffs.

90.   Clayton knew or should have known that its acts or omissions in failing to repair and remedy the mold and other deleterious defects in the Manufactured Home would likely injure or would probably injure the Plaintiffs.

91.   Clayton knew or should have known that its acts or omissions in delaying the repair and replacement of the defective Manufactured Home would likely injure or would probably injure the Plaintiffs.

92.   As a direct and/or proximate cause of the actions and/or omissions of the Defendant, Clayton, the Plaintiffs have suffered the following damages: the loss of their old dwelling place, a 1988 manufactured home; the loss of their $1,500.00 down payment; an undersecured indebtedness to Vanderbilt Mortgage in the principal amount of $107.55.20 at an annual percentage rate of 10.15% for a total amount due to Vanderbilt Mortgage of $278,332.45; the Plaintiffs were made sick, sore, and lame; the Plaintiffs suffered expenses for medicine and physicians' fees, and will be caused to continue to incur such expenses in the future; the Plaintiffs suffered pain and suffering from the damages caused by the Defendant; the Plaintiffs

suffered mental anguish and/or emotional distress from the injuries caused by the Defendant. the loss of insurance premiums and taxes paid on the Manufactured Home; and the loss of the use of their home as a place for family to gather and celebrate, among other costs and damages.

WHEREFORE, the Plaintiffs request this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant, Clayton, to compensate the Plaintiff for the damages listed herein, in its discretion, plus interest, costs, attorney's fees, and such other, further and different relief to which they may prove themselves entitled. The Plaintiff further demands punitive damages against the Defendant, Clayton for its conscious, deliberate, wanton, willful, and malicious actions, or omissions, in an amount in the discretion of the trier of fact.

## COUNT VII
### (Breach of Contract)

93.     In this Count, and by this paragraph, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

94.     The Wiseners did what they promised to do when they entered the Contract.

95.     On or about August 20, 2019, Clayton, however, failed to live up to its promises and breached the Contract by failing to deliver, convey, and install a new Manufactured Home to the Wiseners, by failing to deliver a Manufactured Home

identical to the display model manufactured homes; by failing to deliver, convey, and install a Manufactured Home identical to the manufactured homes displayed in Clayton's brochures and bulletins, by failing to provide the Wiseners with a warranty from the Federal Warranty Service Corporation.

96.     As a direct and/or proximate cause of the actions and/or omissions of the Defendant, Clayton, the Plaintiffs have suffered the following damages: the loss of their old dwelling place, a 1988 manufactured home; the loss of their $1,500.00 down payment; an undersecured indebtedness to Vanderbilt Mortgage in the principal amount of $107.55.20 at an annual percentage rate of 10.15% for a total amount due to Vanderbilt Mortgage of $278,332.45; the Plaintiffs were made sick, sore, and lame; the Plaintiffs suffered expenses for medicine and physicians' fees, and will be caused to continue to incur such expenses in the future; the Plaintiffs suffered pain and suffering from the damages caused by the Defendant; the Plaintiffs suffered mental anguish and/or emotional distress from the injuries caused by the Defendant. the loss of insurance premiums and taxes paid on the Manufactured Home; and the loss of the use of their home as a place for family to gather and celebrate, among other costs and damages.

WHEREFORE, the Plaintiffs request this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant, Clayton, to compensate the

Plaintiff for the damages listed herein, in its discretion, plus interest, costs, and such other, further and different relief to which they may prove themselves entitled.

## COUNT VIII
### (Breach of Express Warranties)

97.    In this Count, and by this paragraph, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

98.    Clayton expressly warranted that the Manufactured Home it sold the Wiseners would be a new manufactured home.  *See* (Ex A); *see also* (Ex C).

99.    Clayton expressly warranted that the new Manufactured Home would conform to and with the standards and quality of the display model(s) of manufactured homes available for the Wiseners to inspect when the Wiseners entered the Contract.  *See* (Ex A, 2 at ¶ 5).

100.   Clayton expressly warranted that the new Manufactured Home would conform to and with the standards and quality of the manufactured homes depicted in the brochures, bulletins and/or floor plans provided to the Wiseners when the Wiseners were "making the decision to purchase the [Manufactured Home] described in the [Contract] (*id*.).

101.   Clayton expressly warranted that the new Manufactured Home would be acceptable for the Wiseners' particular needs.  *See id*.

102. Clayton, in connection with the Wisener's purchase of the Manufactured Home, issued the Wiseners a manufacturer's warranty (the "Manufacturer's Warranty"), a copy of which is attached hereto, and which provided that the Manufactured Home would be "free from Defects in materials and workmanship during the Warranty Period". *See* (Ex C).

103. Clayton, in connection with the Wisener's purchase of the Manufactured Home, issued the Wiseners the Retailer's Warranty, a copy of which is attached hereto. *See* (Ex D, Retailer Closing Agreement at 2), which provided that the installation of the Manufactured Home at the initial home site would be free from defects in materials or workmanship. *See id*.

104. Upon its delivery to the Wiseners on or about August 20, 2019, the Manufactured Home failed to conform to Clayton's express warranties, as it was not a new manufactured home.

105. Upon its delivery to the Wiseners on or about August 20, 2019, the Manufactured Home failed to conform to Clayton's express warranties, as the Manufactured Home failed to conform to and with the standards and quality of the display model(s) of manufactured homes available for the Wiseners to inspect when the Wiseners entered the Contract.

106. Upon its delivery to the Wiseners on or about August 20, 2019, the Manufactured Home failed to conform to Clayton's express warranties, as the

Manufactured Home failed to conform to and with the standards and quality of depicted in the brochures, bulletins and/or floor plans provided to the Wiseners when the Wiseners were "making the decision to purchase the [Manufactured Home] described in the [Contract] (*id*.).

107. Upon its delivery to the Wiseners on or about August 20, 2019, the Manufactured Home was defective, and was covered with mold and in a state of disrepair.

108. Plaintiffs gave Clayton notice of the Manufactured Home's failure to conform to the above-referenced express warranties.

109. Plaintiffs gave Clayton notice of the Manufactured Home's failure to conform to the Retailer's Warranty.

110. Clayton breached the Manufacturer's Warranty by failed to repair or replace defects in the Manufactured Home.

111. Clayton breached the Retailer's Warranty by failed to repair or replace defects in the Manufactured Home within the one-year warranty period.

112. Clayton breached the Retailer's Warranty, as the installation of the home site was not completed in accordance with applicable governmental requirements and/or failed to be free from defects in materials or workmanship within the ninety-day warranty period.

113.   As a direct and/or proximate cause of the actions and/or omissions of the Defendant, Clayton, the Plaintiffs have suffered the following damages: the loss of their old dwelling place, a 1988 manufactured home; the loss of their $1,500.00 down payment; an undersecured indebtedness to Vanderbilt Mortgage in the principal amount of $107.55.20 at an annual percentage rate of 10.15% for a total amount due to Vanderbilt Mortgage of $278,332.45; the Plaintiffs were made sick, sore, and lame; the Plaintiffs suffered expenses for medicine and physicians' fees, and will be caused to continue to incur such expenses in the future; the Plaintiffs suffered pain and suffering from the damages caused by the Defendant; the Plaintiffs suffered mental anguish and/or emotional distress from the injuries caused by the Defendant. the loss of insurance premiums and taxes paid on the Manufactured Home; and the loss of the use of their home as a place for family to gather and celebrate, among other costs and damages.

WHEREFORE, the Plaintiffs request this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant, Clayton, to compensate the Plaintiff for the damages listed herein, in its discretion, plus interest, costs, and such other, further and different relief to which they may prove themselves entitled.

## COUNT IX
## (Breach of Implied Warranties)

114.    In this Count, and by this paragraph, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

115.    The Manufactured Home failed to perform in its intended manner as a new, safe family dwelling, in that it is infested with mold.

116.    Clayton manufactured the Manufactured Home.

117.    Clayton impliedly warranted that the Manufactured Home was fit for its intended use as a new family dwelling pursuant to § 7-2-315 of the *Code of Alabama*.

118.    Clayton breached the implied warranty of fitness for a particular purpose, as the Manufactured Home failed to perform in its intended manner.

119.    Clayton impliedly warranted that the Manufactured Home was merchantable pursuant to § 7-2-315 of the *Code of Alabama.*

120.    Clayton breached the implied warranty of merchantability, as the Manufactured Home was not merchantable.

121.    The Plaintiffs rejected the tender of the Manufactured Home.

122.    The Plaintiffs gave notice to the Defendants of the Plaintiffs' breach of warranty claims pursuant to § 7-2-607 (3) of the *Code of Alabama*.

123.    As a direct and/or proximate cause of the actions and/or omissions of the Defendant, Clayton, the Plaintiffs have suffered the following damages: the loss

of their old dwelling place, a 1988 manufactured home; the loss of their $1,500.00 down payment; an undersecured indebtedness to Vanderbilt Mortgage in the principal amount of $107.55.20 at an annual percentage rate of 10.15% for a total amount due to Vanderbilt Mortgage of $278,332.45; the Plaintiffs were made sick, sore, and lame; the Plaintiffs suffered expenses for medicine and physicians' fees, and will be caused to continue to incur such expenses in the future; the Plaintiffs suffered pain and suffering from the damages caused by the Defendant; the Plaintiffs suffered mental anguish and/or emotional distress from the injuries caused by the Defendant. the loss of insurance premiums and taxes paid on the Manufactured Home; and the loss of the use of their home as a place for family to gather and celebrate, among other costs and damages.

WHEREFORE, the Plaintiffs request this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant, Clayton, to compensate the Plaintiff for the damages listed herein, in its discretion, plus interest, costs, attorney's fees, and such other, further and different relief to which they may prove themselves entitled.

## COUNT X
### (Action Under the Alabama Extended Manufacturer's Liability Doctrine)

124.   In this Count, and by this paragraph, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

125.   Clayton is engaged in the business of selling manufactured homes.

126.   Clayton is engaged in the business of manufacturing manufactured homes.

127.   Clayton sold the Manufactured Home and placed the Manufactured Home in the stream of commerce where, on or about August 6, 2019, the Wiseners entered a Contract to purchase it.

128.   The Manufactured Home reached the Wiseners, the ultimate users and consumers of the Manufactured Home, without any substantial change in its condition from the time Clayton sold it.

129.   The Manufactured Home, when it reached the Wiseners, was in a defective condition and/or in a condition that was unreasonably dangerous to the Wiseners as the ultimate users or consumers, as those terms are defined by the Alabama Extended Manufacturer's Liability Doctrine as enunciated by the Alabama Supreme Court.

130.   In using the Manufactured Home, as it was intended to be used, namely, as a family dwelling place, the Wiseners suffered the following described injuries,

illnesses, and damages as a proximate result of the Manufactured Home's defective and/or unreasonably dangerous condition: covered in mold and in a state of disrepair.

131.   The Plaintiffs claim punitive damages of the Defendant.

132.   As a direct and/or proximate cause of the actions and/or omissions of the Defendant, Clayton, the Plaintiffs have suffered the following damages: the loss of their old dwelling place, a 1988 manufactured home; the loss of their $1,500.00 down payment; an undersecured indebtedness to Vanderbilt Mortgage in the principal amount of $107.55.20 at an annual percentage rate of 10.15% for a total amount due to Vanderbilt Mortgage of $278,332.45; the Plaintiffs were made sick, sore, and lame; the Plaintiffs suffered expenses for medicine and physicians' fees, and will be caused to continue to incur such expenses in the future; the Plaintiffs suffered pain and suffering from the damages caused by the Defendant; the Plaintiffs suffered mental anguish and/or emotional distress from the injuries caused by the Defendant. the loss of insurance premiums and taxes paid on the Manufactured Home; and the loss of the use of their home as a place for family to gather and celebrate, among other costs and damages.

WHEREFORE, the Plaintiffs pray for this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant to compensate the Plaintiff for the damages listed herein in an amount in the discretion of the trier of fact, in its discretion, plus interest, and costs of the action.

## COUNT XI
**(Unfair and Deceptive Trade Practices Act)**

133.   In this Count, and by this paragraph, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

134.   Clayton deceptively represented the Manufactured Home as a new manufactured home.

135.   Clayton deceptively represented the Manufactured Home to be a manufactured home identical or substantially similar to the display model(s) of the manufactured home and/or identical or substantially similar to the manufactured depicted in the brochures and bulletins provided by the Defendant.

136.   Far from new, the Manufactured Home was deteriorated, reconditioned, reclaimed, used, secondhand, or altered to the point of decreasing its value and/or rendering the Manufactured Home unfit for the ordinary purpose for which the Wiseners purchased it.

137.   The Defendant knowingly failed to identify the Manufactured Home as a manufactured home that had been damaged by flood, water, fire, or accident, and the Manufactured Home was damaged to the point of decreasing its value and/or rendering the Manufactured Home unfit for the ordinary purpose for which the Wiseners purchased it.

138.   Clayton advertised the Manufactured Home as new, as identical to or substantially similar to the display model and/or the manufactured home(s) depicted in brochures and bulletins presented by the Defendant.  The Defendant had no intent to sell the Wiseners the Manufactured Home as advertised.

139.   Clayton passed the Manufactured Home off as a manufactured home of "Giles" that caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of the Manufactured Home.

140.  Clayton passed the Manufactured as a "Southern Energy" Manufactured Home that caused confusion or misunderstanding as to the source, sponsorship, approval or certification of the Manufactured Home.

141.   Clayton, through its agents, knowingly made false or misleading statements of fact concerning the need for parts, replacement, or repair service for the Manufactured Home.

142.   Clayton misrepresented itself as having the license or authority to sell the Wiseners a warranty policy underwritten by the Federal Warranty Service Corporation, and, therefore, Clayton misrepresented its authority to negotiate the final terms of the Contract.

143.   Clayton misrepresented itself as an appointed agent of the Federal Service Warranty Corporation with the authority to negotiate the final terms of the Contract.

144.   Clayton intentionally misrepresented that it sold and issued the Wiseners a warranty from the Federal Service Warranty Corporation that would confer upon the Wiseners, or that would involve certain rights or remedies related to the Wiseners' purchase of the Manufactured Home.

145.   In its negotiations with the Wiseners for the purchase of the Manufactured Home, Clayton engaged in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce.

146.   Also, in selling the Manufactured Home to the Wiseners, Clayton, engaged in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce.

147.   In its delivery of and tender of a defective manufactured home to the Wiseners, the Defendant engaged in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce.

148.   When the Wiseners rejected the tender of the Manufactured Home as non-conforming, Clayton continued its pattern and practice of unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce by misleading the Wiseners to allow Clayton further time to remedy the defects in the non-conforming manufactured home.

149.   Then, Clayton again persisted in its deceitful pattern and practice of unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce by failing to perform under the express manufacturer's warranty.

150.   More than fifteen (15) days prior to the filing of this action, the Wiseners communicated a written demand for relief.  *See* (Ex E, copy of UDAP Nortice).

151.   Clayton did not return any written tender of settlement.

152.   As a direct and/or proximate cause of the actions and/or omissions of the Defendant, Clayton, the Plaintiffs have suffered the following damages: the loss of their old dwelling place, a 1988 manufactured home; the loss of their $1,500.00 down payment; an undersecured indebtedness to Vanderbilt Mortgage in the principal amount of $107.55.20 at an annual percentage rate of 10.15% for a total amount due to Vanderbilt Mortgage of $278,332.45; loss of insurance premiums and taxes paid on the Manufactured Home; money paid to medical and medicine providers for medical care for the Wisener family;  and other costs.

WHEREFORE, the Plaintiffs request this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant, Clayton, to compensate the Plaintiffs for the damages listed herein, including but not limited to actual damages, in its discretion, plus interest, costs, and treble damages in accordance with the Deceptive Trade Practices Act.

## COUNT XII
### (Magnuson-Moss Warranty Action)

153.   In this Count, and by this paragraph, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

154.   Clayton failed to provide any writings whatsoever related to the Federal Warranty Service Corporation warranty.

155.   The Manufacturer's Warranty fails to clearly identify the clear identification of the names and addresses of the warrantor because Clayton used its d/b/a "Giles" instead of its proper name and address.

156.   The Manufacturer's Warranty fails to clarify the products or parts covered, as, among other things, it defines "Defects" as "any failure to comply with an applicable building code and state and federal law that was in effect when the home was manufactured", then goes on to warrant that the home is manufactured in a workman-like manner and will be free from "Defects in materials and workmanship during the Warranty period", but the warranty only covers repairs and replacement of "Defects" as that term is defined within the agreement.

157.   The Manufacturer's Warranty further goes on to "expressly disclaim any implied warranties of any kind or nature including the implied warranties of merchantability, fitness for a particular purpose and habitability.  To the extetn applicable law prohibits the disclaimer of any implied warranty, and in the event that

such implied warranty is otherwise extended as a matter of law, dsuch warranty is limited in duration to a period of one year" (Ex A).

158.   The Magnusson Moss act, however, expressly prohibits such a disclaimer.

159.   Other than identifying the parties and the duration of the ninety-day warranty, the Retailer's Warranty fails to provide any information about the warranty required by 15 USC §1502.

160.   By their acts and omissions, the Defendants violated the Magnuson-Moss Warranty Act.

161.   As a direct and/or proximate cause of the actions and/or omissions of the Defendant, Clayton, the Plaintiffs have suffered the following damages: the loss of their old dwelling place, a 1988 manufactured home; the loss of their $1,500.00 down payment; an undersecured indebtedness to Vanderbilt Mortgage in the principal amount of $107.55.20 at an annual percentage rate of 10.15% for a total amount due to Vanderbilt Mortgage of $278,332.45; the Plaintiffs were made sick, sore, and lame; the Plaintiffs suffered expenses for medicine and physicians' fees, and will be caused to continue to incur such expenses in the future; the Plaintiffs suffered pain and suffering from the damages caused by the Defendant; the Plaintiffs suffered mental anguish and/or emotional distress from the injuries caused by the Defendant. the loss of insurance premiums and taxes paid on the Manufactured

Home; and the loss of the use of their home as a place for family to gather and celebrate, among other costs and damages.

WHEREFORE, the Plaintiffs request this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant, Clayton, to compensate the Plaintiff for the damages listed herein, in its discretion, plus interest, costs, attorney's fees pursuant to 15 U.S.C. 2301 (d).

## COUNT XIII
### (Unjust Enrichment/Quasi Contract)

162.  In this Count, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

163.  The Wiseners have suffered a detriment in that they traded in their 1988 manufactured home, paid a $1,500.00 down payment, undertook the indebtedness to Vanderbilt Mortgage and Finance, Inc., and paid $799 for a Federal Warranty Service Corporation Warranty for a new manufactured home that conformed to the quality and standards of the display model and the brochures, bulletins, and floor plans provided by Clayton during the negotiations leading up to the execution of the Contract.

164.  Clayton took: the Wisener's old home; the $1,500 down payment; the $799 for the Federal Warranty Service Warrranty; and $106, 292.20 in proceeds from the Wisener's loan from Vanderbilt Mortgage and Finance Company, Inc., but

failed to provide the Wiseners with a manufactured home for which the Wiseners bargained.

165.   By receiving the Wisener's old home, as well as the money outlined herein, Clayton received a benefit.

166.   Justice demands that Clayton repay the Wiseners for the Wiseners' loss.

167.   WHEREFORE, the Plaintiffs request this Honorable Court, or a subsequent trier of fact, to render judgment against the Defendant, Clayton, to repay the Plaintiffs for the losses it suffered and the benefits Clayton received, as listed herein, in an amount determined by this Court in its discretion, plus pre-judgment interest at the statutory rate, plus costs, and such other, further and different relief to which it may prove itself entitled.

## COUNT XIV
### (Claim for Injunctive Relief)

168.   In this Count, the Plaintiff adopts, by reference, each and every and any and all facts set out in this Complaint, both hereinabove and hereinafter, as if set out fully herein.

169.   In addition to the damages the Plaintiffs seek in other counts of this Complaint, the Plaintiffs seek injunctive relief from this Court to order the Defendants to remove the defective Manufactured Home from the premises located in Polk County, Georgia.

WHEREFORE, based on the foregoing, the Plaintiffs respectfully request this Court to grant injunctive relief by entering a final decree ordering the Defendant to remove the Manufactured Home from the Plaintiffs' premises in Polk County, Georgia.

Respectfully submitted,

/s/ *Patrick Chesnut*.
R. Patrick Chesnut
*Attorney for the Plaintiffs*
Johnston, Moore, and Weston
400 Meridian Street North, Suite 301
Huntsville, AL 35801
Tel: (256) 533-5770 / Fax: (256) 533-5890
patrick@jmmtlawfirm.com

## JURY TRIAL DEMANDED IN THIS CAUSE OF ACTION BY THE PLAINTIFFS