# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **HARRISON ALLEN WISENER,** ) <br> **CINDY LEEANN WISENER, HAROLD** ) <br> **LOGAN WISENER, and HARRISON** ) <br> **ALLEN WISENER & CINDY LEEANN** ) <br> **WISENER, AS NATURAL** ) <br> **GUARDIANS AND     NEXT FRIENDS** ) <br> **OF HMW, MEW, AND MGW,** ) <br>  ) <br> **PLAINTIFFS,** ) <br>  ) <br> **v.** ) <br> **CMH HOMES, INC. d/b/a TRUVALUE** ) <br> **HOMES OF ALEXANDRIA, and** ) <br> **SOUTHERN ENERGY HOMES, INC.** ) <br>  **d/b/a GILES,** ) <br>  ) <br> **DEFENDANTS.** ) | **Case No.: 1:21-cv-01075-CLM** |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

The Defendants, CMH Homes, Inc. d/b/a TrueValue Homes of Alexandria ("CMH") and Southern Energy, Inc., d/b/a Giles ("Southern Energy") (collectively referred to hereinafter as the "Clayton Defendants") both seek an order from this court to compel the claims of the plaintiffs (the "Wiseners") to arbitration related to the Clayton Defendants' sale of personal property to the Wiseners based upon an ostensible dispute resolution agreement executed by only one of them: CMH. *See,*

Page 1 of 10

*e.g.* (Def.'s Mot. to Compel, 12 (where the Clayton Defendants argue that Southern Energy is a third party beneficiary of the standalone arbitration provision)*; see also id.* at (Ex A-2) (the "Standalone Arbitration Provision").

## I. THE CLAYTON DEFENDANTS FAIL TO MEET THEIR INITIAL BURDEN OF PROOF

The Clayton Defendants carry "the initial burden of proving the existence of a contract calling for arbitration" (*SSC Selma Operating Company, LLC v. Fikes*, 238 So.3d 635, 637 (Ala. 2017)). The Clayton Defendants fail to meet this initial burden by offering only a business records declaration from their Regional Vice President, Mr. Eric Boehm, a Regional Vice President who did not participate in the transaction at issue in the above-styled matter, and who has no personal knowledge of the transaction at issue. Vice President Boehm's declaration provides no evidence whatsoever that the Wiseners assented to the purported Standalone Arbitration Agreement. *See* (Def.'s Mot. to Compel at (Ex A-1, Declaration of Eric Boehm)). Instead, Vice President Boehm, using the passive voice, declares that the "Sales Agreement" and the Standalone Arbitration Provision were: "prepared by a person with knowledge of the information in them" (*id.*), but declines to declare who that person was; and that the exhibits he references "were made at or near the time of the acts and events appearing in them" (*id.*), but declines to identify who made them. Despite these obvious evidentiary deficiencies in Vice President Boehm's declaration, the Clayton

Defendants, in their Motion to Compel, reference nothing but the Wiseners' "signatures" (Def.'s Mot. to Compel, 3) to evidence the Wiseners' consent to arbitration.

What the Clayton Defendants mischaracterize as "signatures", however, clearly exist only as words typed on the signature lines of the purported arbitration agreement, and not as evidence of the Wiseners personal assent to the Standalone Arbitration Provision. *See* ((Def.'s Mot. to Compel Arb. at (Ex. A-2, 4)). The Clayton Defendants do not argue that the typewritten words on those signature lines amount to "Electronic Signatures", as defined by § 8-1A-2 of the *Code of Alabama*. This stands to reason, as Alabama's Electronic Signatures Act "does not apply to a transaction" (Ala. Code § 8-1A-2 (1975)), such as the transaction at issue in the above-styled matter, that is "governed by…Title 7, the Uniform Commercial Code" (Ala. Code § 8-1A-3 (1975)); *see also* Ala. Code § 7-2-201 (1975).

Other than these typewritten words declared by Mr. Boehm, the Clayton Defendants offer no evidence to meet their initial burden of proof that the Wiseners assented to arbitration in the Standalone Arbitration Provision. The Clayton Defendants fail, for example to proffer this court any evidence regarding the "the means and the reliability with which the [Clayton Defendants' electronic signature security] procedure performs these functions" (Ala. Code § 8-1A-13 (1975)), the

attribution of these typewritten signatures to the Wiseners, the electronic signatures' authenticity, or any showing that the Clayton Defendants' procedure for executing documents electronically "uniquely identifies the signer or creator of the record" (*id*.).

## II. EQUITABLE ESTOPPEL BARS SOUTHERN ENERGY FROM CONSIDERATION AS A THIRD PARTY BENEFICIARY

In their Motion to Compel, the Clayton Defendants further argue that CMH and the Wiseners "intended to make Southern Energy, as the 'manufacturer of the Home' (Def.'s Mot. to Compel, 12), a third party beneficiary of the purported Standalone Arbitration Provision. Southern Energy d/b/a Giles, however, entered another alternative dispute agreement with the Wiseners (the "Manufacturer's Arbitration Provision"). *See, e.g.*, (Third Amend. Compl. at (Ex. C, the "Manufacturer's Arbitration Provision").

The doctrine of equitable estoppel, therefore, prevents Southern Energy d/b/a Giles from benefitting as an implied third party beneficiary under the Standalone Arbitration Provision because, among other reasons, Southern Energy d/b/a Giles entered the direct and explicit Manufacturer's Arbitration Provision as a condition to the sale of the subject mobile home to the Wiseners. *See id*. "The purpose of the doctrine of equitable estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders the assertion of such rights contrary to equity

and good conscience." *Simple Helix, LLC v. Relus Techs., LLC*, 493 F. Supp. 3d 1087, 1120 (N.D. Ala. 2020) (quoting *Wehle v. Bradley*, 195 So.3d 928, 939).

The Manufacturer's Arbitration Agreement defines not "Southern Energy" but "Giles" as the "Manufacturer" of the mobile home. *See id*. Even if one assumes that the Wiseners indeed knowingly assented to the Standalone Arbitration Provision, something that the Clayton Defendants have not proved, the Wiseners still would have had no intent whatsoever to bestow any contractual benefits upon "Southern Energy", because, so far as the Wiseners knew, Southern Energy had nothing to do with this transaction. According to the conditional Manufacturer's Arbitration Agreement, not Southern Energy but <u>Giles</u> manufactured the mobile home at issue in the above-styled matter, and Southern Energy d/b/a Giles knew that it communicated this fact to the Wiseners, but it failed to communicate to the Wiseners that that Southern Energy operated under the Giles d/b/a. *See* (Third Amend. Compl. at (Ex. C)).

Further, Southern Energy knew that it, ostensibly, entered the Manufacturer's Arbitration Provision with the Wiseners as a condition to the sale of the subject mobile home. *See id*. The Wiseners relied upon Southern Energy's (d/b/a Giles's) communications and upon the Manufacturer's Arbitration Provision, including the fact that it applied only to the sale of a "new" manufactured home. *See* (Third Amend. Compl. at ¶ 66). Therefore, permitting

Southern Energy to compel the causes of action against it to arbitration as a third party beneficiary under the Stand Alone Arbitration Provision, would contradict its earlier conduct in procuring the Manufacturer's Arbitration Provision as a condition to the sale of the subject mobile home to the Wiseners.

"In order for the doctrine of equitable estoppel to apply, a party must demonstrate:

>    (1) That the person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on;
>
>    (2) That the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon the communication; and
>
>    (3) That the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct.

*Wehle v. Bradley*, 195 So. 3d 928, 939 (Ala. 2015)  (internal citations, alterations, and quotation marks omitted).   Equitable estoppel, therefore, clearly applies to Southern Energy's attempt to accept the benefits of the Standalone Arbitration Provision as a third party beneficiary by ignoring its misleading communication in the Manufacturer's Arbitration Provision.

### III.   The Alleged Agreement to Arbitrate is Unconscionable.

Alabama law provides that general contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate an arbitration agreement without contravening the FAA. *Leeman v. Cook's Pest Control, Inc.*, 902 So.2d 641, 644 (Ala.2004).  Even before the court determines whether the Wiseners' claims are encompassed within the Stand Alone Arbitration Provision, the court should disregard the Stand Alone Arbitration Provision as unconscionable. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., permits the invalidation of an arbitration agreement pursuant to state law, provided that such law governs contracts generally.  *See Bess v. Check Express*, 294 F.3d 1298,1306 (11th Cir. 2002).

The Alabama Supreme Court has stated that an arbitration provision is unconscionable when the "(1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power." *American General Finance, Inc. v. Branch*, 793 So.2d 738, 748 (Ala. 2000).   In *Branch*, the Court concluded that the provisional language of "all claims, disputes, or controversies of every kind and nature between Borrower(s) and Lender shall be resolved by binding arbitration, including… those arising out of or relating to the transaction(s) evidenced by this agreement" (*id*., 748) satisfied the first prong of the unconscionability test. Similarly, in the Stand Alone Arbitration Provision at issue in the above-styled matter reads:

> [t]his Agreement applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against [CMH Homes], including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question…arising out of or **relating to** (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents **related to** the purchase and sale of the Home (including, but not limited to, the Retailer Closing Agreement, any Purchase or Sales Agreement…and other instruments and agreements whereby Seller purports to convey or receive any goods or services to or from Buyer or Beneficiaries (collectively, the "Contract"), (iii) any products, goods, services, insurance, supplemental warranty, service contract, and real property (including improvements to the real property) sold under or referred to in the Contract, (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home, and (vii) the interpretation, scope, validity and enforceability of the Contract…

(Def.'s Mot. to Compel at (Ex. A-2) (emphasis added).  The Alabama Supreme Court "has often recognized that the phrase 'relating to' is one of the *broadest* of the coverage provisions." *Branch*, 748 (citations omitted). Therefore, the language in the Standalone Arbitration Provision, drafted by the Clayton Defendants, is grossly favorable to CMH Homes.

The lack of any meaningful choice available to consumers such as the Wiseners, further evidences the unconscionability of the Standalone Arbitration Provision. *See, e.g., Layne v. Garner*, 612 So.2d 404, 408 (Ala.1992).  Assuming,

for the sake of argument, that the Wiseners indeed presented with and accepted the Standalone Arbitration Provision, they would have had no other choice before them and no negotiating power whatsoever in the agreement to arbitrate between them and CMH Homes.  Clearly, the terms of the arbitration provision in this agreement are so grossly favorable to CMH as to satisfy the elements of unconscionability. Therefore, the arbitration provision is unconscionable and as such, is unenforceable.  Accordingly, the Clayton Defendants' Motion to Compel Arbitration is due to be denied.

WHEREFORE, PREMISES CONSIDERED, the Plaintiffs respectfully respond by requesting this Court to deny the Clayton Defendants' Motion to Compel Arbitration and Stay Litigation.

Respectfully submitted this 22nd day of July, 2022.

/s/ *Patrick Chesnut*
R. Patrick Chesnut
(ASB-5515-D57C)
Attorney for the Plaintiff
304 North Marion Street
Athens, Alabama 35611
Tel: (256) 444-0366
patrick@rights-title.com

/s/ *Christopher W. Weston, Esq*.
Christopher W. Weston, Esq.
Attorney for the Plaintiffs
Johnston, Moore, and Weston
400 Meridian Street North, Suite 301
Huntsville, AL 35801

Tel: (256) 533-5770 / Fax: (256) 533-5890  
christopher@jmmtlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2022, I served a copy of the foregoing upon the following counsel of record, *via* e-mail:

DANIEL S. WEBER, ESQ.
Simpson, McMahan, Glick, & Burford, PLLC
100 Concourse Parkway, Suite 310, West Tower
dsweber@smbglawyers.com

s/ *Patrick Chesnut*
R. Patrick Chesnut