UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

**HARRISON ALLEN WISENER,** *et al.***,**
    Plaintiffs,

v.

**CMH HOMES, INC.,** *et al.***,**
    Defendants.

Case No. 1:21-cv-1075-CLM

## MEMORANDUM OPINION

When Harrison Allen Wisener and Cindy Leeann Wisener ("the Wiseners") purchased a manufactured home from CMH Homes, Inc. ("CMH"), they agreed to "mandatory, binding arbitration . . . of all [c]laims." (Doc. 26-3, p. 1). The agreement contained this conspicuous warning:

> **BY SIGNING THIS DISPUTE RESOLUTION AGREEMENT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS AGREEMENT . . . IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BUYER SHOULD SEEK INDEPENDENT LEGAL ADVICE BEFORE SIGNING THIS AGREEMENT. THE PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO TRIAL BY JUDGE OR JURY, WHERE APPLICABLE.**

(Doc. 26-3, p. 4). Because the arbitration agreement is valid, and the Wiseners fail to show why it should not be enforced, the court **GRANTS** Defendants' motion to compel arbitration (doc. 26), and **STAYS** all claims here pending completion of arbitration.

## BACKGROUND

1. <u>The Home</u>: In August 2019, the Wiseners entered a contract to purchase a new, manufactured home from CMH. (Doc. 26, p. 2). The home was constructed by Southern Energy Homes, Inc. ("Southern Energy"). (*Id.*).

The Wiseners allege that when the home was delivered it was "covered in mold," and "deteriorated, reconditioned, reclaimed, used, secondhand, or altered to the point of decreasing its value and/or rendering the [home] unfit for use as a family dwelling." (Doc. 11, p. 4). The home was also allegedly "in a state of disrepair with holes in the flooring and ceiling." (*Id.*).

In August 2021, the Wiseners and their children sued CMH and Southern Energy. (Doc. 4). The operative complaint alleges fourteen claims: (1) fraud, (2) deceit and fraudulent deceit, (3) claim for interlocutory and final declaratory judgment, (4) conversion, (5) negligence, negligent hiring or supervision, and negligent installation and/or repair, (6) wantonness, (7) breach of contract, (8) breach of express warranty, (9) breach of implied warranties, (10) action under the Alabama Extended Manufacturer's Liability Doctrine, (11) Unfair and Deceptive Trade Practices Act, (12) Magnuson-Moss Warranty Action, (13) unjust enrichment/quasi contract, and (14) claim for injunctive relief. (Doc. 11). All claims relate to the manufacture, purchase, sale, and installation of the home.

2. <u>The Agreement</u>: To complete the purchase of their home, the Wiseners executed various documents including (1) a Sales Agreement (doc. 26-2), and (2) a Binding Dispute Resolution Agreement ("the BDRA") (doc. 26-3). Both documents contain the Wiseners' electronic signatures. And both documents indicate that the Wiseners signed electronically on August 6, 2019.

The Wiseners admit that upon signing the Sales Agreement, they entered a valid contract with CMH. (*See* Doc. 11, pp. 2-3, ¶ 8). And the Wiseners admit that as part of that valid contract, they agreed to "enter a binding dispute resolution agreement" with CMH. (*See* Doc. 11, p. 3, ¶ 11). The parties' present dispute is about whether the second agreement—the BDRA—is a valid and enforceable contract.

The BDRA provides that the parties "agree to resolve all disputes pursuant to the terms of this Binding Dispute Resolution Agreement." (Doc. 26-3, p. 1). It also states that the agreement "applies to and governs the rights of intended beneficiaries of the Agreement, who include the following additional Parties: (i) manufacturers of the Home . . ." (Doc. 26-3, p. 1). It is undisputed that Southern Energy is the manufacturer of the home.

The BDRA further provides:

> A. Scope of the Agreement: This Agreement applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or relating to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents related to the purchase and sale of the Home (including, but not limited to, the Retailer Closing Agreement, any Purchase or Sales Agreement, buyer's order, supplemental invoice, and other instruments and agreements whereby Seller purports to convey or receive any goods or services or to convey or receive any goods or services to or from Buyer or Beneficiaries (collecting, the "Contract")), (iii) any products, goods, services, insurance, supplemental warranty, service contract, and real property . . . (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home, and (vii) the interpretation, scope, validity, and enforceability of the Contract . . ."

(*Id.*).

3

The BDRA requires the parties to mediate their claims before proceeding to arbitration or a court proceeding (*Id.*) ("Mediation of Claims is a mandatory condition precedent to arbitration or a court proceeding."). A mediation was held on June 21, 2022, but did not result in settlement. (Doc. 26, p. 5).

The BDRA states that "[t]he Parties agree to mandatory, binding arbitration ("Arbitration") of all Claims that are not resolved in Mediation," and that "Arbitration shall be governed by and conducted under: (a) the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and to the extent not otherwise preempted by the FAA, by applicable state laws, including common law; (b) this Agreement; and (c) the [Construction Industry Arbitration Rules and Mediation Procedures]." (Doc. 26-3, pp. 1-2).

And the BDRA requires that if the buyer has claims against others that are "related to or arising from Claims against the Seller," then the parties must "consolidate the Arbitration of such Claims . . . into one Arbitration to be governed by this Agreement, ***provided, however***, that the Third Party must agree to be joined in the Arbitration." (Doc. 26-3, p. 2) (emphasis in original).

And immediately before the signature line, the BDRA contains the following notice:

> **BUYER UNDERSTANDS THAT THIS DISPUTE RESOLUTION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE TERMS OF THIS AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY SIGNING THIS DISPUTE RESOLUTION AGREEMENT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS AGREEMENT . . . IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BUYER SHOULD SEEK INDEPENDENT LEGAL**

> **ADVICE BEFORE SIGNING THIS AGREEMENT. THE PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO TRIAL BY JUDGE OR JURY, WHERE APPLICABLE. THE PARTIES HAVE ENTERED INTO THIS AGREEMENT KNOWINGLY, WILLINGLY AND VOLUNTARILY.**

(Doc. 26-3, p. 4) (emphasis in original).

CMH and Southern Energy (the "Defendants") ask the court to enter an order that (1) compels the claims of the Wiseners to arbitration before the American Arbitration Association ("AAA") under the AAA's Construction Industry Arbitration Rules, and (2) stays all claims in this proceeding, including the claims of the Wiseners' children who are Plaintiffs to this action. The motion to compel arbitration is brought only with respect to the claims alleged by the Wiseners and *not* the claims alleged by or on behalf of their children.

The Wiseners oppose arbitration with the following arguments: (1) defendants fail to prove the existence of a contract calling for arbitration, (2) equitable estoppel bars Southern Energy from consideration as a third party beneficiary, and (3) the BDRA is unconscionable. (Doc. 28).

## STANDARD OF REVIEW

The party seeking to compel arbitration bears the initial burden of proving the existence of a contract calling for arbitration, and providing that the contract evidences a transaction involving interstate commerce. *SSC Selma Operating Co., LLC v. Fikes*, 238 So.3d 635, 636 (Ala. 2017). Once the moving party meets that initial burden, the party opposing arbitration has the burden of establishing that the agreement is invalid, or that it does not apply to the dispute in question. *Id.* at 637; *see also Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000).

## DISCUSSION

When adjudicating a motion to compel arbitration under the FAA, a district court must engage in a two-step inquiry. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004). First, the court must determine whether the parties agreed to arbitrate the dispute. *Klay*, 389 F.3d at 1200 (citing *Mitsubishi Motors Corp.*, 473 U.S. at 626). In doing so, the court must decide whether (1) the parties entered into a valid arbitration agreement, and (2) whether the claims at issue fall within the scope of that agreement. *AT&T Techs. V. Communs. Workers of Am.*, 475 U.S. 643, 649-50 (1986). And second, the court must decide whether any legal constraints external to the parties' agreement foreclose arbitration. *Klay*, 389 F.3d at 1200 (citing *Mitsubishi Motors Corp.*, 473 U.S. at 626).

At the outset, the court notes that there is a strong federal policy supporting arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (explaining that the FAA reflects a "liberal federal policy favoring arbitration agreements."); *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005). Valid arbitration agreements must be "rigorously enforce[d]" by federal courts. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

With these rules in mind, the court proceeds in two parts. Part I addresses whether the parties entered a valid agreement to arbitrate this dispute. Part II discusses whether the agreement is unconscionable or otherwise unenforceable.

**I.    The BDRA is a valid agreement to arbitrate the claims at issue, and governs the rights of the Wiseners, CMH, and Southern Energy.**

Defendants bear the initial burden of proving that the parties entered an agreement to arbitrate, and that the agreement governs the claims at issue.

**A. The parties entered a valid agreement to arbitrate.**

The first issue is whether the Wiseners entered a valid arbitration agreement.

While "doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Basemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014); *see also Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 301 (2010) (directing courts to "apply[ ] the presumption of arbitrability only" to "a validly formed and enforceable arbitration agreement"). "The threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Basemore*, 827 F.3d at 1329 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). Absent such an agreement, a court cannot compel the parties to settle their dispute in arbitration. *Id.*

State law generally governs whether an enforceable contract or agreement to arbitrate exists. *First Options of Chicago*, 514 U.S. at 944; *Bazemore*, 827 F.3d at 1329. So this court will apply state law principles that govern contract formation. *Entrekin v. Internal Medicine Assocs. Of Dothan, P.A.*, 689 F.3d 1248, 1251 (11th Cir. 2012).

In Alabama, a contract requires an offer, acceptance, consideration, and mutual assent. *Mobile Airport Auth. V. HealthSTRATEGIES, Inc.*, 866 So. 2d 773, 779 (Ala. 2004). And a party "typically manifests its assent to arbitrate a dispute by signing the contract containing the arbitration provision." *Smith v. Mark Dodge, Inc.*, 934 So. 2d 375, 378 (Ala. 2006).

Here, the Wiseners demonstrated assent to the BDRA when they signed immediately below the following conspicuous warning:

> **BUYER UNDERSTANDS THAT THIS DISPUTE RESOLUTION AGREEMENT IS AN IMPORTANT AGREEMENT AND THAT THE**

> **TERMS OF THIS AGREEMENT AFFECT BUYER'S LEGAL RIGHTS. BY SIGNING THIS DISPUTE RESOLUTION AGREEMENT, BUYER ACKNOWLEDGES THAT BUYER HAS READ, UNDERSTANDS AND AGREES TO BE BOUND BY THIS AGREEMENT . . . IF BUYER DOES NOT UNDERSTAND ANY OF THE TERMS OR PROVISIONS OF THIS AGREEMENT, INCLUDING ADVANTAGES OR DISADVANTAGES OF ARBITRATION, THEN BUYER SHOULD SEEK INDEPENDENT LEGAL ADVICE BEFORE SIGNING THIS AGREEMENT. THE PARTIES HEREBY WAIVE THEIR RIGHTS, IF ANY, TO TRIAL BY JUDGE OR JURY, WHERE APPLICABLE. THE PARTIES HAVE ENTERED INTO THIS AGREEMENT KNOWINGLY, WILLINGLY AND VOLUNTARILY.**

(Doc. 26-3, p. 4) (emphasis in original).

The Wiseners assert that the electronic signatures are merely "words typed on the signature lines" and that Defendants have failed to prove that the Wiseners assented to arbitration. But Defendants presented a signed document, and supplied a Certificate of Completion from DocuSign. (Doc. 29-2). The Certificate of Completion demonstrates that the Wiseners adopted the electronic signatures affixed to the Agreement on August 6, 2019. (Doc. 29-2).

The Wiseners' argument is perplexing because they have elsewhere implicitly conceded that their electronic signatures are evidence of assent to a contract. The Wiseners admit that they entered a valid contract (*i.e.*, the Sales Agreement) with CMH. (*See* Doc. 11, pp. 2-3, ¶ 8). And they appear to have signed the Sales Agreement—via an electronic signature—on the same day as the BDRA. The Wiseners have neither argued nor pointed to any evidence that suggests that the electronic signatures on the Sales Agreement are theirs, but the same electronic signatures on the BDRA are not.

The court finds that under both Alabama and federal law, the Wiseners' electronic signatures proves their assent to the terms of the BDRA. So the court concludes that the parties entered a valid agreement to arbitrate.

### B. The claims at issue fall within the BDRA.

As explained above, there is a strong federal policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 24-25. And a motion to compel arbitration "should not be denied unless it may be said with positive assurances that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *AT&T Techs. V. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).

The BDRA defines its scope as follows:

> A. Scope of the Agreement: This Agreement applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or relating to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents related to the purchase and sale of the Home (including, but not limited to, the Retailer Closing Agreement, any Purchase or Sales Agreement, buyer's order, supplemental invoice, and other instruments and agreements whereby Seller purports to convey or receive any goods or services or to convey or receive any goods or services to or from Buyer or

> Beneficiaries (collecting, the "Contract")), (iii) any products, goods, services, insurance, supplemental warranty, service contract, and real property . . . (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home, and (vii) the interpretation, scope, validity, and enforceability of the Contract . . ."

(Doc. 26-3, p. 1).

The plain language of the BDRA is clear, and broad. It requires arbitration for "common law claims, contract and warranty claims, tort claims . . ." and "any other matter in question . . . arising out of or relating to the Home." (*Id.*).

The court finds that the scope of the BDRA includes all of the Wiseners' claims because they all arise from and relate to the manufacture, purchase, and installation of the home. And thus, the Wiseners must proceed with arbitration of these claims.

### C. Southern Energy is an intended beneficiary of the BDRA.

The BDRA states: "Buyer and Seller agree that this Agreement also applies to and governs the rights of intended beneficiaries of the Agreement, who include the following additional Parties: (i) manufacturers of the Home . . ." (Doc. 26-3, p. 1). It is undisputed that Southern Energy is the manufacturer of the home.

In Alabama, an intended beneficiary of a contract has the right to enforce its terms. *Anderson v. Howard Hall Co.*, 179 So. 2d 71, 72-73 (Ala. 1965) ("The rule in this state . . . is that a third person may enforce a promise made for his benefit even though he is a stranger to both the contract and the consideration."). The test for whether a party is an intended beneficiary of a contract is whether the two parties who entered into a valid contract intended to benefit a third party. *Id.* at 73.

10

The plain language of the BDRA states that the parties intended to make Southern Energy—as the "manufacturer[ ] of the Home,"—a beneficiary of the contract.

The Wiseners argue that the doctrine of equitable estoppel prevents Southern Energy from benefiting as an implied third party beneficiary under the Standalone Arbitration Provision because Southern Energy entered a different arbitration agreement. (*See* Doc. 28, p. 4). But the Wiseners cite no legal authority for this proposition.

The Wiseners also suggest that the court should apply the doctrine of equitable estoppel because the contract is misleading. (*See* Doc. 28, p. 5-6). But the court finds that the contract was not misleading, as it plainly states that it applies to the "manufacturers of the Home." (Doc. 26-3, p. 1). Whether the Wiseners knew the name of the name of the manufacturer is irrelevant because the BDRA plainly covered all "manufacturers of the Home." *Id.*

The court finds that Southern Energy is an intended beneficiary of the BDRA, and the Wiseners' claims against it must be decided in a single arbitration proceeding before the AAA, under its Construction Industry Arbitration Rules.

## II. The Wiseners have not established that the BDRA is unconscionable or otherwise unenforceable.

The FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically. *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007) (quoting *Bess v. Check Express*, 294 F.3d 1298, 1306 11th Cir. 2002)). Therefore, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996)).

Under Alabama law, unconscionability is an affirmative defense to the enforcement of a contract, and the party asserting that defense bears the burden of proving it by substantial evidence." *Bess*, 294 F.3d at 1306-07.

The Alabama Supreme Court outlined factors that are important in determining whether a contract is unconscionable:

> In addition to finding that one party was unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract.

*Layne v. Garner*, 612 So.2d 404, 408 (Ala. 1992).

The Wiseners argue that they lacked a meaningful choice, and faced unequal bargaining power. (*See* Doc. 28, pp. 8-9). But in *Steele*, the Supreme Court of Alabama held that a nearly identical allegation—that the consumer "had no meaningful opportunity to negotiate the contract terms and was forced to accept the agreement on a take-it-or-leave-it basis"—failed to carry the nonmovant's burden of proving unconscionability. *Steele v. Walser*, 880 So. 2d 1123, 1130 (Ala. 2003). Moreover, the Wiseners fail to make any arguments about the relative bargaining positions of the parties, and they present no evidence to suggest that they could not have obtained the same product without signing an arbitration agreement.

Accordingly, the court concludes that Wiseners have not established that the BDRA is unconscionable or otherwise unenforceable.

\* \* \*

When a district court determines a party has entered into a written arbitration agreement that is enforceable under ordinary state-law contract

principles, and the claims before the court fall within the scope of that agreement, "the FAA requires a court to either stay or dismiss [the] lawsuit and to compel arbitration." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). So the court will compel arbitration and stay the case.

## CONCLUSION

For these reasons, the court **GRANTS** CMH Homes' motion to compel arbitration (doc. 26) and **STAYS** all claims here pending completion of arbitration. *See* 9 U.S.C. § 3. The court **ORDERS** the parties to electronically file (a) a notice that arbitration has begun and later (b) a notice that explains the result of the arbitration.

**DONE** and **ORDERED** on December 21, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE